IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YURI (URI) KASPAROV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | No. 3:16-cv-3206-G-BN |
| AMBIT TEXAS, LLC and STEVEN | § | |
| THOMPSON, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendants Ambit Texas, LLC and Robert Stephen Thompson have filed a Motion to Compel Plaintiff to Reappear for Deposition and for Sanctions Based on Plaintiff's Obstructive Conduct During His Deposition, *see* Dkt. No. 170 (the "MTC"), moving under Federal Rules of Civil Procedure 30 and 37 to compel the renewed deposition of Plaintiff Yuri (Uri) Kasparov because of Mr. Kasparov's and his counsel's obstructive conduct during Mr. Kasparov's deposition.

All discovery matters in this case have been referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish. *See* Dkt. No. 134.

In accordance with the Court's December 16, 2016 Standing Order on Discovery [Dkt. No. 138], Defendants and Mr. Kasparov have filed a Joint Status Report on Defendants' Motion to Compel Plaintiff to Reappear for Deposition and for Sanctions Based on Plaintiff's Obstructive Conduct During his Deposition. *See* Dkt. No. 172.

Based on the parties' filing in compliance with the Court's Standing Order, although the Court previously ordered the MTC to be unfiled, *see* Dkt. No. 171, the Court will now address the MTC as presented through the Joint Status Report.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Defendants' Motion to Compel Plaintiff to Reappear for Deposition and for Sanctions Based on Plaintiff's Obstructive Conduct During His Deposition [Dkt. No. 170].

## Background

Defendants deposed Mr. Kasparov in Jacksonville, Florida on July 13, 2017. According to Defendants, Mr. Kasparov "engaged in a systematic effort to deprive Defendants of the ability to use Plaintiff's deposition testimony, and Plaintiff's conduct was aggravated by his counsel's repeated use of improper 'form' objections." Dkt. No. 172 at 4. Defendants more fully explain that they

> were deprived of a full and fair opportunity to depose Plaintiff in this case based on Plaintiff's and his counsel's conduct during Plaintiff's deposition. As will be shown below and in the attached exhibits, Plaintiff engaged in an intentional, systematic effort to deprive Defendants of the ability to use the deposition by refusing to give responsive answers uncluttered by Plaintiff's own non-responsive, volunteered, self-serving narrative of his own views of the case. Throughout the entire deposition, defense counsel was forced to ask questions as many as seven times before obtaining a responsive answer. On many such occasions, Plaintiff never gave a responsive answer to the question asked or, if he did, he accompanied the response with non-responsive, self-serving speeches. Plaintiff's counsel impeded the deposition and exacerbated Plaintiff's misconduct by repeatedly making objections to the "form" of the question in response to clearly proper questions and, on at least twenty occasions, by instructing Plaintiff not to answer permissible questions.

*Id.* at 3-4.

Defendants contend that, "[b]y refusing to give responsive answers, repeatedly objecting to proper questions, and instructing Plaintiff not to answer allowable questions, both Plaintiff and his counsel deprived Defendants of their ability to fully and fairly take Plaintiff's deposition." *Id.* at 4. "Under Federal Rules of Civil Procedure 30 and 37, Defendants respectfully request that the Court order Plaintiff to reappear for a full deposition in Dallas, Texas and pay for the costs of the court reporter and videographer for his first deposition" in the amount of $5,424.00 and "further request that the Court order Plaintiff to provide responsive, non-evasive answers to questions at his renewed deposition and warn Plaintiff that any further obstructive conduct will result in dismissal of his case with prejudice." *Id.*; *see also id.* at 31.

Mr. Kasparov responds that he "conducted himself very admirably at his deposition," and,

> [i]n the face of tremendous stress applied to him by the Defendant's counsel in seven hours of rigorous and extremely aggressive and contentious cross-examination encompassed in the 10 hour day at the site of the deposition, the circumstances facing Mr. Kasparov from the perspective of his ailing physical and mental health, and the pressure of his federal lawsuit weighing upon his shoulders, Mr. Kasparov never lost his temper with Defendants' counsel or his patience with the deposition process itself. In the medical records filed under seal, at AEO bates stamped P-00519 his doctor's notes of their meeting held on July 10, 2017, just three days before Mr. Kasparov's deposition on July 13, 2017, describes a significant problem with his speech pattern as a part of his medical condition.
>
> Since the deposition on July 13, 2017 additional, seemingly insurmountable obstacles now face Mr. Kasparov, who has been the caretaker for his 89 year old mother for decades and who is and has been for several weeks in the Baptist Hospital in Jacksonville, Florida, placed on a ventilator for life support weeks ago, and unresponsive to the point that her doctors have recommended he authorize the removal of the ventilator as nothing further can be done for her. As a consequence, Mr.

Kasparov is unable to travel away from Jacksonville and has precious little time to spend away from his mother's bedside in the Jacksonville hospital.

*Id.* at 31-32 (footnotes omitted).

More specifically, Mr. Kasparov asserts that "Defendants' counsel improperly objected to Plaintiff's counsel's instruction to his client on two occasions to refuse to answer on the grounds of harassing and hostile repetition"; "Plaintiff's counsel did not obstruct the counsel's conduct of the deposition"; "Plaintiff's counsel's use of the 'objection to form' in the deposition was proper"; "[n]o witness coaching took place at Mr. Kasparov's deposition"; and that, "[o]f the '21' instructions not to answer that Defendants' counsel now objects to, the number should be sixteen instructions not to answer which requested privileged information under the laws of Florida marital privilege, as two (not three) were concerning hostile and harassing repetitious questioning as Plaintiff's counsel has discussed above, and one was simply an objection to form without any instruction not to answer and two others were answered by Mr. Kasparov before the instruction was given to him." *Id.* at 33-50.

Mr. Kasparov contends that he "and his attorney were not obstructive, nor did Plaintiff conduct himself at any time during his deposition in a hostile or disrespectful manner, and always did his best to respond fully to the questions that were put to him by Defendants' counsel." *Id.* at 52. But, he argues, "[i]f the Court, after weighing the arguments and authorities made and cited by both sides in this lawsuit, decides violations of the discovery rules did occur, Plaintiff requests that the Court consider denying sanctions against Plaintiff for those violations which the Court believes

occurred and limiting any second deposition to a deposition by not more than ten (10) written cross examination questions under Rule 31, FRCP, with no questions which were already asked at the first deposition, and no right to re-cross examination by follow up written questions." *Id.* at 52-53 (footnote omitted).

## Legal Standards

Federal Rule of Civil Procedure 30 governs the conduct or counsel, parties, and deponents in connection with a party's deposition as an initial matter, and Rule 30(c)(2) governs objections to deposition questions and when a party must answer. *See* FED. R. CIV. P. 30(c)(2). "An objection at the time of the examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." *Id.* "An objection must be stated concisely in a nonargumentative and nonsuggestive manner." *Id.* "An objection to a deponent's competence – or to the competence, relevance, or materiality of testimony – is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time." FED. R. CIV. P. 32(d)(3)(A). "An objection to an error or irregularity at an oral examination is waived if: (i) it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time; and (ii) it is not timely made during the deposition." FED. R. CIV. P. 32(d)(3)(B).

And Rule 30(c)(2) provides only three situations in which a deponent may

properly be instructed not to answer a question – "only when necessary" (1) to preserve a privilege, (2) to enforce a limitation previously ordered by a court, or (3) to present a motion under Federal Rule of Civil Procedure 30(d)(3) to terminate or limit the deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. *Id.* ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."). "'Directions to a deponent not to answer a question can be even more disruptive than objections.'" *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 591 n.7 (S.D. Tex. 2011) (quoting FED. R. CIV. P. 30(d) 1993 Advisory Committee's Note).

"Because the plain language of Rule 30 is rather clear on what types of objections counsel may make and when counsel may instruct a deponent not to answer a question, courts have generally concluded that it is improper to instruct a witness not to answer a question based on a relevancy objection. However, if counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner (i.e., in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party), then it would be permissive to instruct a deponent not to answer and move for a protective order under Rule 30(d)(3)." *Id.* at 591 (footnote and citations omitted).

"The only ground for [a Rule 30(d)(3)] motion to limit or terminate the deposition is that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Mayberry v. Wal-Mart La., LLC*, Civ.

A. No. 14-cv-478, 2015 WL 420284, at *3 (W.D. La. Jan. 29, 2015).

And Rule 30(d)(3)(A) expressly limits the timing for a Rule 30(d)(3) motion: "At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." FED. R. CIV. P. 30(d)(3)(A); *see Mashiri v. Ocwen Loan Servicing, LLC*, No. 12cv2838-L (MDD), 2014 WL 4608718, at *2 (S.D. Cal. Sept. 15, 2014) ("If counsel for Plaintiff believed that counsel for Defendant was asking the same question repeatedly in bad faith or to unreasonably annoy, embarrass or oppress Plaintiff, counsel's option was to move to terminate or limit the deposition under Rule 30(d)(3). Plaintiff's current motion to terminate the deposition is untimely for that purpose as Rule 30(d)(3) requires the motion be made during the deposition."); *see also Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) ("Webber gave no reason beyond his declaration that the questions were designed to harass rather than obtain information – which may well have been their point, but Fed. R. Civ. P. 30(d) specifies how harassment is to be handled. Counsel for the witness may halt the deposition and apply for a protective order, *see* Rule 30(d)(4), but must not instruct the witness to remain silent. 'Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).' Fed. R. Civ. P. 30(d)(1). Webber violated this rule repeatedly by telling Gerstein not to answer yet never presenting a motion for a

protective order. The provocation was clear, but so was Webber's violation.").

Rule 30(d)(3) further provides that "[t]he motion may be filed in the court where the action is pending or the deposition is being taken"; that, "[i]f the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order"; that "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in [Federal Rule of Civil Procedure] 26©"; that, "[i]f terminated, the deposition may be resumed only by order of the court where the action is pending"; and that Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses" in connection with a Rule 30(d)(3) motion. FED. R. CIV. P. 30(d)(3)(A)-©.

Once a deponent has appeared for a deposition, Federal Rule of Civil Procedure 37(a)(3)(B)(i) governs a motion to compel a deponent to answer a question. *See* FED. R. CIV. P. 37(a)(3)(B)(i) ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: (i) a deponent fails to answer a question asked under Rule 30...."). And Rule 37(a)(2) provides that "[a] motion for an order to a party must be made in the court where the action is pending." FED. R. CIV. P. 37(a)(2).

For Rule 37(a)(3)(B)'s purposes, "an evasive ... answer ... must be treated as a failure to ... answer." FED. R. CIV. P. 37(a)(4). Where an answer to a question at deposition is evasive depends on the particular circumstances of the questioning. *See, e.g.*, *Southern U.S. Trade Ass'n v. Guddh*, 565 F. App'x 280, 281 (5th Cir. 2014) ("Because Guddh remained in India, SUSTA agreed to conduct his deposition via telephone. During the deposition, Guddh was (at the very least) evasive. Acting pro se,

Guddh refused to answer routine questions such as where he attended college, refused to answer relevant questions on the grounds that they were 'overly broad,' and claimed that information such as his home address and whether he had sold a business were 'privileged.'"); *OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d. 476, 490-93 (N.D. Tex. 2016), *objections overruled*, No. 3:13-cv-2110-KS, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016); *In re Pryor*, 341 B.R. 571, 577 (Bankr. N.D. Miss. 2006) ("Pryor's responses at her deposition, taken only sixteen days after she had filed her voluntary Chapter 7 petition and within three days before she executed her bankruptcy Schedules and Statement of Affairs, could best be described as evasive. She had seen her bankruptcy attorney on two occasions and had actually filed her petition, but she never directly answered Safeway's attorney as to whether she had filed a bankruptcy case.").

And Rule 37(a)(5) provides, in pertinent part, that, on a Rule 37(a)(3)(B)(i) motion to compel an answer from a deponent, including a non-party:

- "If the motion is granted ... the court must, after giving an opportunity to be heard, require the ... deponent whose conduct necessitated the motion, the ... attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

- "If the motion is denied, the court may issue any protective order authorized under Rule 26© and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of

expenses unjust."

- "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26© and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."

FED. R. CIV. P. 37(a)(5)(A)-(C).

Federal Rule of Civil Procedure 30(d)(2) provides that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2). "The meaning of 'appropriate sanction' in Rule 30(d)(2) has been broadly interpreted as [t]he full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule. Many courts have construed Rule 30(d)(2) to apply to circumstances where a party's conduct at a deposition warranted remedial action." *Murillo Modular Group, Ltd. v. Sullivan*, No. 3:13-cv-3020-M, 2016 WL 6139096, at *7 (N.D. Tex. Oct. 20, 2016) (internal quotation marks omitted)

"The broad scope of appropriate sanctions under Rule 30(d)(2) includes, where appropriate, an award of expenses associated with a deposition's continuation that is necessitated by a [person's] conduct that impedes, delays, or frustrates the fair examination of the deponent." *Nieman v. Hale*, No. 3:12-cv-2433-L-BN, 2014 WL 4375669, at *5 (N.D. Tex. Sept. 4, 2014). The movant bears the burden on any Rule 30(d)(2) motion that it makes. *See Kleppinger v. Tex. Dep't of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012).

**Analysis**

I.    <u>Mr. Kasparov's alleged non-responsiveness during his deposition</u>

Under Rule 37(a)(3)(B)(i), the Court may compel answers to depositions questions where a deponent fails to answer a question asked under Rule 30. FED. R. CIV. P. 37(a)(3)(B)(i). And "an evasive or incomplete ... answer ... must be treated as a failure to ... answer." FED. R. CIV. P. 37(a)(4).

Defendants assert that "[c]ourts have repeatedly compelled follow-up depositions or imposed other sanctions when a deponent repeatedly failed to answer questions and gave non-responsive, evasive answers" and that, "[h]ere, most of the time allowed under the Rules for the deposition was consumed with attempting to unravel Plaintiff's non-responsive, evasive answers that were intentionally designed to make the deposition unusable." Dkt. No. 172 at 20, 21. Defendants contend that their "counsel was forced to ask questions at least twice – and as many as seven times" – and that, "[o]n many such occasions, defense counsel never obtained a responsive answer to the question asked." *Id.* at 21. According to Defendants, "[b]y refusing to give responsive answers, Plaintiff wasted as much as 2/3 of the time allowed for a deposition under the Federal Rules." *Id.*

Mr. Kasparov responds that,

[a]s admitted by counsel for Defendants in their portion of this Joint Status Report, at p. 25, "As explained above, defense counsel was forced to ask questions at least twice – and as many as seven times. See Chart Detailing Non-Responsive Answers, attached as Ex. B (App. at 104-108); see also Kasparov Dep. at pages cited in Ex. B." But Mr. Kasparov did give responsive Answers which included all "responsive information" known to him to counsel's questions and he in no way wasted 2/3 of the

-11-

length of the deposition as has been represented by Defendants' counsel. With no Judge present, Defendants' counsel was obligated to accept those Answers and move on, and his conduct was improper and he wasted time when he refused to move on and instead insisted on harassing Mr. Kasparov with repeat questions that Mr. Kasparov had already answered to the best of his ability. If Plaintiff's counsel had not put a stop to such behavior one wonders how much longer Defendants' counsel would have persisted with such conduct. The alternative, the relatively extreme measure of halting the deposition in order to file a motion for a protective order and/or sanctions would not have been "proportionate" nor within the spirit or the letter of the Federal Rules of Procedure as expressed in Rule 1, FRCP, the advisory committee's comments to it, or this Court's Standing Order On Discovery.

*Id.* at 31-33 (footnotes omitted).

The Court has reviewed the entire deposition transcript. Mr. Kasparov frequently did not provide a "yes" or "no" answer the first time that a question was asked even if it could have been so answered. He often volunteered additional information and provided his own explanation as to the relevance or materiality of his answer to Defendants' counsel question or to tell his side of the story, so to speak. As Mr. Kasparov explains in response to the MTC, "[o]n at least ten occasions during Mr. Kasparov's deposition, [Plaintiff's counsel] stated on the record to Mr. Kasparov he should listen to [Defendants' counsel's] questions and just answer his question." Dkt. No. 172 at 41.

In short, Mr. Kasparov was hardly the witness a questioning attorney would wish for, but he answered questions as one might expect of an inexperienced witness who is a party to the dispute at issue.

Defendant's counsel objected to Mr. Kasparov's answers as non-responsive, by Defendants' count, on over 100 occasions. *See* Dkt. No. 172 at 8-9. And Defendants

contend that, "[t]hroughout the course of the deposition, Plaintiff refused to give responsive answers to even the most simple questions" and that Defendants' "counsel was forced to ask questions at least twice – and as many as seven times." *Id.* at 21 (emphasis removed). According to Defendants, ""[o]n many such occasions, defense counsel never obtained a responsive answer to the question asked." *Id.* (citing Dkt. No. 173, Defs.' Ex. A, at 39:24-41:1, 50:10-25, 80:18-83:9, 83:10-84:16, 84:17-85:8, 89:5-20, 115:1-23, 135:2-20, 137:11-138:2, 143:24-145:4, 287:25-290:5, 295:21-297:4, 341:8-21, 366:8-368:21, 381:18-383:2).

In response, Mr. Kasparov laments "Defendants' counsel's seeming obsession with asking questions over and over again until he believes he has a 'clean answer,' presumably because he believed that somehow he was entitled to have a 'clean' record because he was conducting a 'trial deposition' and not a discovery deposition." *Id.* at 34 (footnote omitted). Mr. Kasparov complains that, using one example, "[a]t a minimum Defendants' counsel should have refrained from repetitiously and in a hostile manner asking Mr. Kasparov the same question time after time" and "also should have pointed out which part of Mr. Kasparov's answers he thought were unresponsive inasmuch as Mr. Kasparov's answers 'Yeah'…'Yes' and …'Correct' each time the question was asked were virtually identical and inarguably responsive to the question each time. Instead of identifying the portion of answers that were given in explanation by Mr. Kasparov of those one word answers as unresponsive and/or moving to strike only those portions, [Defendants' counsel] [mischaracterized the entirety of each of the answers Mr. Kasparov gave as unresponsive...." *Id.* at 38.

The Court cannot agree that Defendants' counsel cross the line in asking questions multiple times if counsel believes the witness has not given a responsive answer. As another court has observed, "depositions have more flexibility than interrogatories because they permit an attorney to ask follow-up questions based on answers to previous questions or repeat questions if a deponent is being evasive." *Kleppinger*, 283 F.R.D. at 335.

And the provision in the Standing Order on Discovery that "[t]he party propounding discovery should not persist in opposing any objections if the responding party has produced or provided all responsive information and documents" does not change this. Dkt. No. 138 at 4. As discussed more fully above and below, if the defending counsel believes that the questioning counsel is conducting a deposition in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent, Rule 30(d)(3) provides a mechanism for the defending counsel to address that concern.

Neither is Defendants' counsel's focus on possibly using the deposition testimony at trial, for example, for impeachment, improper or misplaced. The Federal Rules anticipate that use and do not contemplate, as a general matter, a second, "trial deposition" of each party or witness. *See* FED. R. CIV. P. 32.

At the same time, a non-responsiveness objection also preserved Defendants' ability – if deposition testimony is needed for use at, for instance, summary judgment or trial – to seek a ruling on those objections, including requesting that the Court strike the non-responsive portion of answers. The Court has reviewed each instance

in which Defendants contend that their counsel never obtained a responsive answer to the question asked, and the Court cannot agree with their assessment. Except for some instances discussed below in which he was instructed not to answer, Mr. Kasparov gave responsive answers to these questions, notwithstanding whatever complaints Defendants may have preserved about the manner in which he did so – which, again, Defendants can ask the Court to address at a later time based on their objections, if necessary.

Based on the Courts review of the transcript, the Court finds that Mr. Kasparov did not give evasive answers that amount to a failure to answer deposition questions at all and did not impede, delay, or frustrate his fair examination in a manner that warrants Rule 30(d)(2) sanctions. The Court determines that ordering Mr. Kasparov to reappear for another deposition is not warranted under Rules 30(d)(2) or 37(a)(3)(B).

II.     Plaintiff's counsel's objections to "form"

Mr. Kasparov's deposition was taken pursuant to Rule 30, under which "[a]n objection at the time of the examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still proceeds," FED. R. CIV. P. 30(c)(2); under which "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner," *id.*; and under which "[a]n objection to an error or irregularity at an oral examination is waived if: (i) it relates to ... the form of a question or answer, ... a party's conduct, or other matters that might have been corrected at that time; and (ii) it is not timely made during the deposition,"

FED. R. CIV. P. 32(d)(3)(B). Judges, except in the rarest of circumstances, are not present during depositions and do not, except in even rarer circumstances, rule on objections during a deposition as it proceeds.

Defendants argue that "Plaintiff's counsel's boilerplate objections to 'form' were legally improper and exacerbated Plaintiff's non-responsiveness during the deposition." Dkt. No. 172 at 22. Defendants report that "Plaintiff's counsel's repeated, boilerplate objections to 'form' were made without stating the basis for the objection" and note that, "[a]lthough the Fifth Circuit has not decided whether blanket 'form' objections are proper under the Federal Rules of Civil Procedure, in the absence of a local rule addressing such objections, the vast majority of courts to have considered the issue find that such objections are improper and are insufficient to preserve error." *Id.* at 22, 24 (footnote omitted). According to Defendants, "Plaintiff's counsel's repeated, boilerplate objections to 'form' were made without stating the basis for the objection" and "were designed to impede Defendants' ability to obtain necessary information and exacerbated Plaintiff's non-responsiveness." *Id.* at 24-25. Defendants further explain that "Plaintiff's counsel encouraged [Mr. Kasparov]'s conduct by objecting to the 'form' of questions without providing any legal basis for his objection, as required," and Mr. Kasparov "then gave excessively evasive answers to questions to which his lawyer objected." *Id.* at 14.

Defendants argue that "Plaintiff's counsel's improper conduct during the deposition provides an additional reason to require Plaintiff to reappear for a second deposition in Dallas, Texas," in connection with which "Defendants respectfully request

that the Court instruct Plaintiff's counsel to state the basis of his objection in a succinct, non-suggestive manner at the second deposition and to refrain from influencing Plaintiff's responsiveness with repeated, improper 'form' objections." *Id.* at 24-25.

Mr. Kasparov acknowledges that his "counsel's objections to form were almost entirely strictly limited to the exact words 'objection to form,' nothing more." Dkt. No. 172 at 41. Mr. Kasparov responds that his counsel's objecting to "form" was proper and followed the majority view, *see id.* at 44, but Mr. Kasparov has also now provided specific grounds for objections to "form" that he made during the depositions, *see* Dkt. No. 173 at 135-40 of 146.

Objecting without stating a sufficient ground may mean that an objection is waived if it relates to the form of a question or another matter might have been corrected at the time of questioning. There is no basis or need to rule, one by one, on the validity or waiver of those objections at this time or to resolve the question of whether blanket "form" objections at depositions are proper under the Federal Rules. The only issue on Defendants' MTC is whether Plaintiff's counsel's objections to "form" impeded, delayed, or frustrated the fair examination of Mr. Kasparov and warrant an appropriate sanction under Rule 30(d)(2).

In that regard, Mr. Kasparov asserts that his counsel did not obstruct the deposition and, "to the contrary," "[o]n at least ten occasions during Mr. Kasparov's deposition, [Plaintiff's counsel] stated on the record to Mr. Kasparov he should listen to [Defendants' counsel's] questions and just answer his question." Dkt. No. 172 at 41.

And Mr. Kasparov points out that "Defendants' counsel never once during the entirety of the deposition asked for further elaboration from Plaintiff's counsel regarding any of his 'objections to form'" and that "Defendants' counsel never once during the entirety of the deposition skipped a beat in his questioning of the witness to make a single objection to Plaintiff's counsel's objections to form and neither did the Plaintiff himself hesitate to answer his questions quickly and without hesitation." *Id.* at 41, 42 (footnotes omitted). According to Mr. Kasparov, "[i]n short Defendant's counsel never reacted at all on or off the record to Plaintiff's attorney making his objections to form" but now claims "that Plaintiff's attorney was coaching Mr. Kasparov through his objections to form, as though the use of the words 'objection to form' were a type of dog whistle19 which would set Mr. Kasparov off on some type of rant. If Plaintiff's attorney were able to somehow coach Mr. Kasparov by saying 'objection to form' then there should be some evidence in the 386 pages of transcript accumulated over a period of seven hours which would point to such a feat, but there is none." *Id.* at 42.

Based on the Court's reviewed of the deposition transcript, the Court finds that Plaintiff's counsel's objections to "form" did not so impede, delay, or frustrate Mr. Kasparov's fair examination as to warrant any sanction under Rule 30(d)(2) and that Plaintiff's counsel did not engage in improper witness coaching during the deposition.

That Defendants' counsel did not address Plaintiff's counsel's "form" objections at or during the deposition does not necessarily mean that Defendants have waived any waiver of the objections, but it does diminish the force of Defendants' assertion that "Plaintiff's counsel exacerbate[d] Plaintiff's non-responsiveness and cue[d] him to

be evasive by repeatedly objecting to the 'form' of the question." Dkt. No. 172 at 12. In fact, based on the Court's review, Plaintiff's counsel and Defendants' counsel were at odds when Plaintiff's counsel said more, not less, in objecting during the deposition.

Plaintiff's counsel objected as he did with a risk of possible waiver under Rule 32(d)(3)(B). And, if the Court is ever required to address the objections to particular questions and answers in connection with attempted use of the deposition testimony at, for instance, summary judgment or trial, the Court may find that at least some of the objections are waived or are invalid or not well-taken.

But, on this MTC, the Court determines neither the manner in which or the frequency with which Plaintiff's counsel objected to "form" during the deposition warrant Rule 30(d)(2) sanctions, including ordering a renewed deposition of Mr. Kasparov.

III.  <u>Plaintiff's counsel's instructions that Mr. Kasparov not answer certain questions</u>

A.  Instructions not to answer based on marital-communications privilege

Plaintiff's counsel instructed Mr. Kasparov not to answer certain questions based on a state-law marital-communications privilege. Defendants explain that, on 17 occasions, counsel instructed him not to answer "on the basis of the marital-communications privilege; however, the questions related to facts regarding Plaintiff's ex-wife or communications with Plaintiff's ex-wife after she and Plaintiff divorced," and "[t]he questions did not seek information regarding communications between Plaintiff and his ex-wife during their marriage." Dkt. No. 172 at 25 (emphasis removed). And Defendants maintain that "questions about Plaintiff's ex-wife are

indisputably relevant to Plaintiff's claim that Ambit improperly terminated Plaintiff's position as a consultant, because Ambit terminated that position due to Plaintiff's ex-wife's involvement with a competitor (and Plaintiff's indisputable assistance in helping her to do so)." *Id.* at 26.

The parties agree that because this is a diversity case, the availability of a privilege is governed by the law of the forum state. *See id.* at 26 (citing *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 299 n.26 (5th Cir. 2005)), 48 & n.24 (citing *Miller v. Transamerican Press*, 621 F.2d 721, 724 (5th Cir. 1980)).

According to Defendants,

[u]nder Texas law, the marital-communications privilege is a narrow privilege that is limited "confidential communications between spouses." *Marshall v. Ryder Sys., Inc.*, 928 S.W.2d 190, 195 (Tex. App. – Houston [14th Dist.] 1996, writ denied) (first emphasis in original). Testimony that refers to acts, as opposed to communications, are not privileged. *Weaver v. State*, 855 S.W.2d 116, 121 (Tex. App. – Houston [14th Dist.] 1993, no writ) ("The marital communication privilege applies to utterances and not to acts.").

Here, because all of the questions to which Plaintiff's counsel instructed Plaintiff not to answer were directed toward facts – such as where Plaintiff's ex-wife lived – or were inquiries regarding communications they had after they were divorced, those communications are not covered by the marital-communications privilege. *See id.*; *Marshall*, 928 S.W.2d at 195 (noting that the marital-communications privilege applies to communications "between spouses"). Thus, all of the questions to which Plaintiff's counsel instructed his client not to answer on the basis of the marital-communications privilege were not, as a matter of well-established law, protected by the marital-communications privilege. The Court should compel Plaintiff to answer such questions during a second deposition.

*Id.* at 26.

But Mr. Kasparov responds that, "[o]f the '21' instructions not to answer that

Defendants' counsel now objects to, the number should be sixteen instructions not to answer which requested privileged information under the laws of Florida marital privilege, as two (not three) were concerning hostile and harassing repetitious questioning as Plaintiff's counsel has discussed above, and one was simply an objection to form without any instruction not to answer and two others were answered by Mr. Kasparov before the instruction was given to him." *Id.* at 50.

And, as to the privilege-based instructions not to answer, Mr. Kasparov asserts that

> the law of Texas calls for a choice of law analysis under these circumstances due to the importance of Texas' and Florida's laws relating to the marital privilege. Plaintiff disagrees with Defendants' position that Texas law should be applied in the context of this discovery dispute.
>
> In *Manufacturers Collection Company LLC v. Precision Airmotive LLC*, 3:12-CV-0853-L, (Memorandum of Opinion and Order of Judge Lindsay, District Court Judge, N.D. Tex. June 1, 2015), unpublished, Judge Lindsay discussed the process of just such a choice-of-law analysis at length and determined in that case that Texas had little if any interest in the particular "dispute" involved, and therefore applied Pennsylvania law instead of Texas law.
>
> Here the questions of marital privilege justifying an instruction and subsequent refusal to answer questions surround the circumstances of the marriage between Plaintiff and his ex-wife, Maria, neither of whom has ever resided in Texas. They resided in Florida since marrying in 2008 until divorcing in 2012, after separating in 2011. See, 12:1-8, and 17:21–18:18 (App. at 5-6). Since the Texas marital privilege, as described by Defendants above in their portion of this JSR is much narrower than the Florida marital privilege, there is indeed a conflict of the two states' marital privilege laws, and Florida has a much greater interest in and infinitely more contacts with the Kasparovs and their marriage, the Florida marital privilege must be applied on the issue of the propriety of the 16 instructions not to answer questions by Plaintiff's counsel based on the marital privilege.

*Id.* at 48-49 (footnote omitted).

Defendants reply that,

> [w]ithout contesting whether Texas or Florida law applies, it is clear that, under either state's law, the marital-communications privilege applies only to "communications" and not to acts. *See Marshall v. Ryder Sys., Inc.*, 928 S.W.2d 190, 195 (Tex. App. – Houston [14th Dist.] 1996, writ denied); *State v. Norris*, 352 So. 2d 875, 877 (Fla. Ct. App. 1977). Plaintiff's attempt to rely on a case from 1898 to support his argument that the marital privilege is broader in Florida than in Texas should be rejected, since that case was decided 78 years before the Florida marital-communications statute was enacted in Florida. *See* Fl. Stat. Ann. § 90.504 (codified in 1976).

*Id.* at 26. That is, Defendants take the position that, as to the testimony at issue here, the two states' laws are substantially the same, and there is no need to undertake a choice-of-law analysis. *See Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary.").

In a diversity action raising only state law claims, the Court must apply the state law of attorney-client privilege. *See* FED. R. EVID. 501 ("The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). But, as another court in this circuit recently explained,

> [a]s Magistrate Judge Bourgeois of the Middle District of Louisiana has cogently stated: "Rule 501 is silent ... regarding how the court must determine the 'state law' governing privileges." *Shaw Group, Inc. v. Zurich Am. Ins. Co.*, No. 12-257-JJB-RLB, 2014 WL 1784046, at *7 (M.D. La. May 5, 2014) (Bourgeois, M.J.).
> Lead commentators have discussed three approaches for

interpreting Rule 501 when faced with a horizontal choice of law issue: "(1) [a]ssume that the state "which supplies the rule of decision" is the state which also supplies the privilege law; (2) apply the privilege rules of the state in which the federal court sits; or (3) apply the conflict of law doctrine of the state in which the federal court sits." *KL Grp. v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) (citing Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, § 5435, 865-69 (1980)). The Fifth Circuit has endorsed the third approach to Rule 501, which requires the court to apply the choice-of-law rules of the forum state to determine the governing law for attorney-client privilege. *See Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724, *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). This approach is consistent with the Erie doctrine, which requires federal courts sitting in diversity to apply the forum state's substantive law, including its choice-of-law rules. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 495-96 (1941).

*Id.*; *see Plotkin v. N. River Ins. Co.*, No. 12-1077, 2012 WL 2179103, at *4-5 (E.D. La. June 12, 2012) (Knowles, M.J.) (applying forum state's choice of law rules to decide which state's privilege law applies when there is a conflict between the forum state's privilege law and that of the state that supplies the substantive rule of decision).

In a footnote, however, with particular significance to the issue in the instant case, Magistrate Judge Bourgeois pointed out:

> Several decisions in the Fifth Circuit appear to endorse the first approach to Rule 501 in the absence of any clear need to conduct a choice-of-law analysis. *See, e.g., Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) ("Since [Mississippi] state law provides the rule of decision, Mississippi law is determinative of the attorney client privilege."). In fact, this court has applied the first approach in resolving a motion to quash a deposition filed by Zurich where there was no clear choice of law issue. (*See* R. Doc. 234 at 4, n. 3). Some courts have explicitly endorsed the first approach to Rule 501, however, where the substantive law has already been determined through choice-of-law principles. *See, e.g., United States Sur. Co. v. Stevens Family Ltd. P'ship*, No. 11 C 7480, 2014 WL 902893 (N.D. Ill. Mar. 7, 2014) ("Once the court has, by applying appropriate choice of law principles, determined the

substantive law applicable to a claim based on state law, the privilege issues are determined by that same state's law.").
*Shaw Group*, 2014 WL 1784046, at *7 n.10.

*Benson v. Rosenthal*, Civ. A. No. 15-782, 2016 WL 3001129, at *2-*3 (E.D. La. May 25, 2016).

The parties agree that, if the Court must engage in any choice-of-law analysis, it should apply Texas's choice-of-law rules. *See generally Atl. Mar. Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013) (explaining that ""[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits" and that, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules" (citing *Klaxon*, 313 U.S. at 494-96)).

Texas courts utilize the "most significant relationship" test to determine which state's law applies to a particular substantive issue. *See Coghlan v. Wellcraft Mar. Corp.*, 240 F.3d 449, 452 n.2 (5th Cir. 2001) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)). This test is based on the *Restatement (Second) of Conflict of Laws* and utilizes a multi-factor methodology to determine which state has the most significant relationship to the substantive issues involved in a dispute. *See Duncan*, 665 S.W.2d at 421. "The choice of law is evaluated issue by issue." *Casa Orlando Apartments, Ltd. v. Federal Nat'l Mortg. Ass'n*, 624 F.3d 185, 191 (5th Cir. 2010). "Section 6 of the Restatement lists the general factors that should inform a choice of law question: (a) the needs of the interstate and international systems, (b) the relevant

policies of the forum, © the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." *Id.*

Deciding which state's laws should govern an issue "is a question of law for the court to decide." *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) (citing *Duncan*, 665 S.W.2d at 421); *see also McKinney BB v. U.S. Realty Advisors, LLC*, No. 01-11483, 2003 U.S. App. LEXIS 28011, at *18 (5th Cir. Jan. 24, 2003) ("[T]he question of which state's law to apply is a question of law."); *Janvey v. Suarez*, No. 3:10-cv-2581-N, 2013 WL 5663107, at *3 (N.D. Tex. Oct. 17, 2013). But this legal determination involves a factual inquiry. *See Hughes Wood Products*, 18 S.W.3d at 204; *Janvey*, 2013 WL 5663107, at *3. That is, "the party urging application of another state's substantive law [must] furnish the Court with 'sufficient information' to establish that the law of another state applies." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 671 (N.D. Tex. 2011) (quoting *Holden v. Capri Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App. – Amarillo 1997, no pet.)) (internal quotations omitted). Absent such sufficient information, "'the failure to provide adequate proof of choice of law ... results in a presumption that the law of the foreign jurisdiction is identical to the law of Texas.'" *Id.* (quoting *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App. – Corpus Christi 1999, pet. denied)) (internal brackets omitted).

And "Texas courts initially determine whether there is a conflict between Texas

law and the other potentially applicable law." *Bailey v. Shell Western E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010). "Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis." *R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005).

Defendants' counsel's questions to Mr. Kasparov that Defendants raise as ones to which his counsel improperly instructed him not to answer on privilege grounds are as follows:

1. Dkt. No. 173, Defs.' Ex. A, at 18:24-19:1-2: "So you mentioned that your ex-wife left you. When did she leave you?"
2. *Id.* at 19:3-6: "Can you tell me what period of time you and your ex-wife Maria were living together, sir?"
3. *Id.* at 19:19-20:1-2: "When your ex-wife did leave you, did she live somewhere besides the condo that you own in Jacksonville, Florida, and the apartment where you were living in Brooklyn?"
4. *Id.* at 21:5-14: "So my question is, when your wife left you in 2011, did she go to live some place other than the condo that you own in Jacksonville, Florida, and the apartment that you were renting in Brooklyn, New York?"
5. *Id.* at 21:17-20: "Can you tell me in what month in 2011 your wife left you?"
6. *Id.* at 21:23-22:1: "Can you tell me what months in 2011 you and your wife were living together in the same household?"
7. *Id.* at 22:4-7: "Do you know where your ex-wife Maria is living now?"
8. *Id.* at 22:10-16: "So you're not even going to tell me if you know where she's living now?"
9. *Id.* at 23:6-9: "When is the last time you've had any communication with your ex-wife Maria?"
10. *Id.* at 23:15-16: "Have you ever had any discussions with your ex-wife Maria about this lawsuit since you became divorced?"
11. *Id.* at 316:21-24: "Have you ever discussed with her whether she registered as a consultant for Ampegy?"
12. *Id.* at 318:14-19: "Did you ever have any discussions with your second ex-wife about whether or not she registered as a consultant with Ampegy?"
13. *Id.* at 319:25-320:1: "Do you know what business Ampegy is in?"
14. *Id.* at 330:18-331:4: "Sir, the email address that's listed on the document under marykasparov@gmail.com, that is an email address that you say that your wife

at the time had created for you, correct?"

15. *Id.* at 352:25-353:5: "When this issue came up and you received a call from Mr. Starkweather, did you contact Myahri Kasparov to ask her if it was true? I'm not asking you about the conversation, but did you contact her to ask her if it was true?"

16. *Id.* at 361:19-23: "And my question is, June of 2012, is that consistent with your recollection as to the date when the divorce proceeding in New York was filed?"

17. *Id.* at 371:19-12: "I thought your wife had left you by that point –"

With the subject of the dispute in mind, the Court turns to whether there is an actual substantive conflict between Texas law and Florida law as applied to the privilege invoked as to these questions.

The Supreme Court of Florida recently explained that "Section 90.504(1), Florida Statutes (2007), provides that '[a] spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between spouses while they were husband and wife.'" *Hernandez v. State*, 180 So.3d 978, 998 (Fla. 2015) (emphasis removed).

According to the Florida Supreme Court, Section 90.504 codified "the confidential marital-communications privilege," which, "despite the fact that [the Florida Supreme Court will] broadly construe this privilege to protect spousal confidences, ... only applies to communications that were originally intended to be confidential." *Lynch v. State*, 2 So.3d 47, 65 (Fla. 2008) (emphasis and footnote omitted) (citing *Jackson v. State*, 603 So.2d 670, 671 (Fla. 4th DCA 1992) ("There is a strong public policy supporting the marital privilege. The courts will not engage in an after-the-fact analysis of whether a statement is 'incidental to' or 'because of' the

-27-

marital relationship, because a married couple, and each of them, should be secure in the knowledge that their private communications are exactly that – private." (citation omitted))). The Florida marital-communications privilege "does not apply to observations made by [one] spouse" of the other and "only applies to confidential communications," *Bolin v. State*, 117 So.3d 728, 736 (Fla. 2013) (internal quotation marks omitted), "not to acts which are in no way communications," *Kaczmar v. State*, 104 So.3d 990, 999 (Fla. 2012) (" Because these were observations of her husband's actions rather than communications between them, privilege does not apply to this testimony.").

And Section 90.507, Florida Statutes (2007), provides that "[a] person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person, or the person's predecessor while holder of the privilege, voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. This section is not applicable when the disclosure is itself a privileged communication." Accordingly, "the marital privilege does not apply if the statement was knowingly made in [third parties'] presence without any reasonable expectation of privacy or intent that the statement be made only to the spouse." *Hernandez*, 180 So.3d at 998. "Therefore, for a marital communication to be protected, the court must determine the couple had a reasonable expectation of privacy at the time the communication took place." *Boyd v. State*, 17 So.3d 812, 817 (Fla. 4th DCA 2009).

The Court cannot accept Mr. Kasparov's reliance on *Mercer v. State*, 24 So. 154 (Fla. 1898), to attempt to extend the privilege beyond confidential communications between spouses in the face of Florida's codification of the confidential marital-communications privilege and the Florida Supreme Court's more recent case law describing its parameters and limitations.

Under Texas Rule of Evidence 504(a)(2), "[a] person has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made to the person's spouse while they were married. This privilege survives termination of the marriage." TEX. R. EVID. 504(a)(2). "A communication is 'confidential' if a person makes it privately to the person's spouse and does not intend its disclosure to any other person." TEX. R. EVID. 504(a)(1). Like the Florida Supreme Court, Texas courts will narrowly construe any exception to the privilege where "the societal interest to be protected by the marital communication privilege ... is the institution of marriage." *Ludwig v. State*, 931 S.W.2d 239, 242 (Tex. Crim. App. 1996). But, under Texas law, "[t]he marital communication privilege applies to utterances and not to acts." *Weaver v. State*, 855 S.W.2d 116, 121 (Tex. App. – Houston [14th Dist.] 1993, no writ).

Based on the Court's review of the governing law, there is no actual substantive conflict between Texas law and Florida law as to the marital-communications privilege as applied to the deposition questions at issue here.

Under either Texas or Florida law, the marital-communications privilege does not apply to questions asking about acts and not communications or acts which are in

no way communications, which includes the fact and timing of Mr. Kasparov's wife's leaving him and the periods of time in which Mr. Kasparov and his wife were living together. *See* Dkt. No. 173, Defs.' Ex. A, at 18:24-19:1-2 ("So you mentioned that your ex-wife left you. When did she leave you?"); *id.* at 19:3-6 ("Can you tell me what period of time you and your ex-wife Maria were living together, sir?"); *id.* at 21:17-20 ("Can you tell me in what month in 2011 your wife left you?"); *id.* at 21:23-22:1 ("Can you tell me what months in 2011 you and your wife were living together in the same household?"); *id.* at 330:18-331:4 ("Sir, the email address that's listed on the document under marykasparov@gmail.com, that is an email address that you say that your wife at the time had created for you, correct?"); *id.* at 361:19-23 ("And my question is, June of 2012, is that consistent with your recollection as to the date when the divorce proceeding in New York was filed?"); *id.* at 371:9-12 ("I thought your wife had left you by that point –").

Likewise, the privilege does not apply to questions about where Mr. Kasparov's wife lived, either while they were married or – even if it is based on communications between them after they were divorced in 2012 – after their marriage ended. *See id.* at 19:19-20:1-2 ("When your ex-wife did leave you, did she live somewhere besides the condo that you own in Jacksonville, Florida, and the apartment where you were living in Brooklyn?"); *id.* at 21:5-14 ("So my question is, when your wife left you in 2011, did she go to live some place other than the condo that you own in Jacksonville, Florida, and the apartment that you were renting in Brooklyn, New York?"); *id.* at 22:4-7 ("Do you know where your ex-wife Maria is living now?"); *id.* at 22:10-16 ("So you're not

even going to tell me if you know where she's living now?").

Questions asking about Mr. Kasparov's post-divorce communications with his ex-wife are not covered by the privilege as codified in both Texas and Florida. *See id.* at 23:6-9 ("When is the last time you've had any communication with your ex-wife Maria?"); *id.* at 23:15-16 ("Have you ever had any discussions with your ex-wife Maria about this lawsuit since you became divorced?").

Some questions could have called for both pre- and post-divorce communications and could only be privileged as to confidential communications during marriage. *See id.* at 316:21-24 ("Have you ever discussed with her whether she registered as a consultant for Ampegy?"); *id.* at 318:14-19 ("Did you ever have any discussions with your second ex-wife about whether or not she registered as a consultant with Ampegy?"). Plaintiff's counsel's instructions not to answer and invocation of privilege were proper only insofar as Mr. Kasparov was not required to reveal confidential communications with his ex-wife that occurred while they were married.

One question did expressly ask about any conversation between Mr. Kasparov and his wife during their marriage, but, even if Plaintiff's counsel properly invoked the privilege and instructed Mr. Kasparov not to answer, Mr. Kasparov still answered the question. *See id.* at 352:25-353:5 ("When this issue came up and you received a call from Mr. Starkweather, did you contact Myahri Kasparov to ask her if it was true? I'm not asking you about the conversation, but did you contact her to ask her if it was true? .... I never talk with her. I never found her. .... She change telephone."). Mr. Kasparov acknowledges that there is no invocation of privilege to determine in that instance

where the "answer [was] given by [him] despite [an] instruction not to answer on basis of marital privilege." Dkt. No. 173 at 143 of 146.

Similarly, Plaintiff's counsel did not instruct Mr. Kasparov not to answer the question at "Do you know what business Ampegy is in?" Dkt. No. 173, Defs.' Ex. A, at 319:25-320:1. Rather, "this was an objection to the form of the question, not the raising of a privilege – no instruction not to answer was given to Mr. Kasparov." Dkt. No. 173 at 143 of 146. And Mr. Kasparov did answer the question. *See* Dkt. No. 173, Defs.' Ex. A, at 320:2-7.

To permit Defendants to obtain an answer to these questions as to which Plaintiff's counsel's instruction not to answer and invocation of the marital-communications privilege is overruled, the Court determines that the appropriate remedy is to order Mr. Kasparov to submit to a deposition on written questions under Federal Rule of Civil Procedure 31 limited to the questions itemized above as Numbers 1-12, 14, 16, and 17 as to which, in whole or in part, the marital-communications privilege does not apply and no answer was given.

Finally, the Court will not, as Mr. Kasparov requests, on a discovery motion, rule on the merits of the substantive issue of whether Ambit's Policies and Procedures incorporated into the Independent Consultant Contract were illusory or otherwise invalid. Federal Rule of Civil Procedure 26(b)(1) provides that, "[u]nless otherwise limited by court order," "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *accord Lopez v. Warren Transport, Inc.*, No.

3:16-cv-2755-G-BN, 2017 WL 551680, at *6 (N.D. Tex. Feb. 10, 2017) (finding that request "seek discovery that is relevant to Plaintiffs' claims as pleaded – whatever Defendants think about their chances of success"). The Court will not decide these discovery matters based on one party's "'strong belief in the merits of [the party's] litigation positions.'" *Heller v. City of Dallas*, 303 F.R.D. 466, 489 (N.D. Tex. 2014) (quoting *Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10cv00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012)).

B. Instructions not to answer questions as harassing

Plaintiff's counsel also instructed Mr. Kasparov not to answer on three occasions on the basis that questions were "harassing" – although two are closely connected:

1. Dkt. No. 173, Defs.' Ex. A, at 82:5-83:9:

> Q Is it your testimony under oath – just please listen to my question. Is it your testimony under oath that you didn't have enough time to review Ambit's written contract and policies and procedures online even though you had time to get on an airplane and fly from Florida to California to meet with a lawyer to discuss suing Ambit? That's your testimony?
> [Plaintiff's Counsel]: Objection to form.
> A This is only two days. There's not enough time. I got flight connections and, you know, you going far away, you tired, exhausted.
> Q So you had time to fly to California, but you didn't have time to review the contract. Is that what you're saying?
> [Plaintiff's Counsel]: I'm going to have to object and instruct the witness not to answer because I believe that these questions are harassing –
> THE WITNESS: Yeah.
> [Plaintiff's Counsel]: – I believe that you've repeatedly asked the same question. You've gotten your answer, sir.
> [Defendants' Counsel]: I think I haven't gotten a responsive answer.
> BY [Defendants' Counsel]:
> Q But are you going to refuse to answer the question I just posed?
> [Plaintiff's Counsel]: I'm instructing you not to answer because it's harassing.
> Q Are you going to refuse to answer?

A Yes.

2.    *Id.* at 143:8-145:4:

Q Let me go back to something else, sir. So you knew from all your experience, two decades plus in the MLM industry, that Mr. Thompson, who was an independent consultant and not corporate, you knew that he didn't have authority to be making promises to you about what positions you would be granted, correct?

[Plaintiff's Counsel]: Objection to the form.

Q You can answer.

A Yeah, that's why I told him. That's why I was not believing him.

Q Sir, is the answer to my question yes?

[Plaintiff's Counsel]: Objection to the form.

Q You can answer.

A Yes. I know he can't offer me executive position.

Q Okay. And you knew that – you knew that because Mr. Thompson was an independent consultant and didn't work for the corporate entity, you knew that he couldn't make an offer to make you executive, correct?

[Plaintiff's Counsel]: Objection to the form.

Q You knew that? Yes?

A Correct. But he told me he founder partner. He give me business card. This was founder partner here, and he told me, I'm working with seniors directly, and I'm on advisory board. He told me. You want truth? This the truth.

[Defendants' Counsel]: Objection; nonresponsive, sir. Objection – objection; nonresponsive.

Q You knew from all your years working in the MLM industry that one independent consultant couldn't make promises on behalf of the company to another independent consultant. You knew that, right?

[Plaintiff's Counsel]: Objection to the form. Counsel, I believe that question's been asked and answered three times –

[Defendants' Counsel]: It absolutely hasn't. If you instruct him not to answer, I'm going to seek sanctions. This goes to the core of the case. You are object – you are obstructing the deposition.

BY [Defendants' Counsel]:

Q Answer the question.

[Plaintiff's Counsel]: Objection. I'm instructing you not to answer.

Q Do you refuse to answer that question?

[Plaintiff's Counsel]: That's my instruction.

THE WITNESS: Okay.

Defendants assert that this "questioning is not 'harassing' and does not warrant

an instruction not to answer" and that, "[i]f Plaintiff's counsel truly believed the question was improper, they only permissible course of action would be to suspend the deposition," but "Plaintiff's counsel was not permitted to instruct Plaintiff not to answer." Dkt. No. 172 at 27. Although Plaintiff's counsel now expresses concerns about the viability of doing so and bringing a Rule 30(d)(3) motion during the deposition, the Court agrees with Defendants. *See Murillo Modular*, 2016 WL 6139096, at *6. And, contrary to Mr. Kasparov's assertion, this Court's Standing Order on Discovery does not provide otherwise or alter Rule 30's application or operation in this case.

Here, too, the improper instructions not to answer will be addressed by requiring Mr. Kasparov to submit to a Rule 31 deposition on written questions limited to the three questions quoted immediately above that Plaintiff's counsel instructed him not to answer.

IV.    Award of expenses

Under Rules 30(d)(2) and 37(a)(5), the Court determines that, under all of the circumstances presented here, Mr. Kasparov and Defendants should bear their own expenses, including attorneys' fees, in connection with the MTC.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Defendants' Motion to Compel Plaintiff to Reappear for Deposition and for Sanctions Based on Plaintiff's Obstructive Conduct During His Deposition [Dkt. No. 170].

SO ORDERED.

DATED: October 26, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE